Shively v. ACI Learning Holdings, LLC, 2025 NCBC 51.

STATE OF NORTH CAROLINA

UNION COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV000500-890

BRETT SHIVELY,

        Plaintiff,

v.

ACI LEARNING HOLDINGS,
LLC; MIS TRAINING INSTITUTE
HOLDINGS, INC.; BOATHOUSE
CAPITAL CONTINUATION
FUND, LP; BOATHOUSE
CAPITAL LP; and
BOATHOUSE CAPITAL III LP,

        Defendants.

**ORDER AND OPINION ON
BOATHOUSE DEFENDANTS'
MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION AND
FAILURE TO STATE A CLAIM AND
DEFENDANTS ACI LEARNING
HOLDINGS, LLC AND MIS TRAINING
INSTITUTE HOLDINGS, INC.'S
MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION**

1.     **THIS MATTER** is before the Court on (1) the 9 April 2025 filing of the *Boathouse Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim* (the Boathouse Motion), (ECF No. 22 [Boathouse Mot.]); and (2) the 23 April 2025 filing of *Defendants ACI Learning Holdings, LLC and MIS Training Institute Holdings, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction* (the ACI Motion; and with the Boathouse Motion, the Motions), (ECF No. 37 [ACI Mot.]). Pursuant to Rule 12(b)(2) of the North Carolina Rules of Civil Procedure (the Rule(s)), the Motions request dismissal of all claims in Plaintiff's Complaint, (ECF No. 3). (Boathouse Mot. 1; ACI Mot. 1.) The Boathouse Motion also requests dismissal of the Complaint pursuant to Rule 12(b)(6). (Boathouse Mot. 1.)

2.     For the reasons set forth herein, the Court **DENIES** the Motions. Defendants are subject to personal jurisdiction in North Carolina, and Plaintiff has sufficiently alleged that the Boathouse Defendants are parties to the SAR.

> *Parker Poe Adams & Bernstein LLP by Nicholas H. Lee, and Vedder Price P.C. by Jason B. Sobelman and Chad A. Schiefelbein, for Plaintiff.*
>
> *Rayburn Cooper & Durham, P.A. by Ross R. Fulton and Lauren J. Schantz, and Ice Miller LLP by Aaron A. Nichols, for Defendants Boathouse Capital Continuation Fund, LP, Boathouse Capital LP, and Boathouse Capital III LP.*
>
> *Gordon Rees Scully Mansukhani, LLP by Kendra Stark, Benjamin Williams, and Robert W.F. Beckmann, for Defendants ACI Learning Holdings, LLC and MIS Training Institute Holdings, Inc.*

Robinson, Chief Judge.

## I.     INTRODUCTION

3.     This action arises out of the termination of Plaintiff Brett Shively's (Plaintiff) employment with Defendant ACI Learning Holdings, LLC (ACI) and Plaintiff's execution of and attempt to enforce the provisions of a corresponding severance agreement.  Plaintiff alleges that Defendants ACI and MIS Training Institute Holdings, Inc. (MIS; and together with ACI, the ACI Defendants), and Defendants Boathouse Capital Continuation Fund, LP, Boathouse Capital LP, and Boathouse Capital III LP (collectively, Boathouse or the Boathouse Defendants; and together with the ACI Defendants, Defendants) failed to purchase his equity interests in ACI pursuant to the severance agreement.

## II.     FACTUAL BACKGROUND

4.     Based on the Court's review of the Complaint, the affidavits, and the arguments presented at the hearing, the Court makes the following findings of fact solely for the purpose of deciding the Motions to the extent they seek dismissal pursuant to Rule 12(b)(2).  *See Soma Tech., Inc. v. Dalamagas*, 2017 NCBC LEXIS 26, at *13 (N.C. Super. Ct. Mar. 24, 2017).

### A.     The Parties

5.     Plaintiff is a citizen of North Carolina.  (Compl. ¶ 3, ECF No. 3 [Compl.]; Aff. Brett Shively Opp'n Boathouse Mot. ¶ 13, ECF No. 39.2 [1st Shively Aff.].)

6.     ACI is a Delaware limited liability company with its principal place of business in Colorado.  (Compl. ¶ 5; Aff. Chong Moua Supp. ACI Mot. ¶ 4, ECF No. 37.2 [2d Moua Aff.].)

7.     MIS is a Delaware corporation with its principal place of business in Colorado.  (Compl. ¶ 6; 2d Moua Aff. ¶ 4.)  In 2020, Boathouse Capital LP merged MIS with another company known as LeaderQuest to form ACI.  (Compl. ¶ 6; Aff. Brett Shively Opp'n ACI Mot. ¶ 8, ECF No. 46.2 [2d Shively Aff.].)  ACI provides professional education services in the areas of internal audit, cybersecurity, and information security management.  (2d Shively Aff. ¶ 35.)

8.     Boathouse Capital Continuation Fund, LP, Boathouse Capital LP, and Boathouse Capital III LP are Delaware limited liability partnerships with their principal places of business in Pennsylvania.  (Compl. ¶¶ 7–9; Aff. Chong Moua Supp. Boathouse Mot. ¶ 6, ECF No. 23.3 [1st Moua Aff.].)

9. Boathouse Capital LP is an investment company that provides debt and equity to small businesses. (1st Moua Aff. ¶ 5.)

10. MIS hired Plaintiff in December 2019. (1st Shively Aff. ¶ 10.) Plaintiff was the CEO of MIS when MIS and LeaderQuest merged. (1st Shively Aff. ¶ 9.) Plaintiff remained as CEO of ACI until 1 August 2024. (Compl. ¶ 4; 1st Shively Aff. ¶ 6.)

11. At the time MIS hired Plaintiff, Plaintiff was a citizen of Illinois. (1st Moua Aff. ¶ 21.) ACI's records reflect that Plaintiff moved to North Carolina on 13 July 2023. (Boathouse Mot. Ex. C, ECF No. 23.4 [Emp. R.]; 1st Shively Aff. ¶ 15.) Plaintiff informed ACI and Boathouse of his move to North Carolina in 2023. (1st Shively Aff. ¶ 15.)

12. Chong Moua (Mr. Moua) is the Chairman of ACI's Board of Directors and the Managing Partner of the Boathouse Defendants. (Compl. ¶ 11; 1st Moua Aff. ¶ 9.)

13. The Boathouse Defendants have no property or employees in North Carolina. (1st Moua Aff. ¶¶ 12–13.) They are not registered to do business in North Carolina, nor do they have an agent for service of process in North Carolina. (1st Moua Aff. ¶¶ 7–8.)

14. ACI has no property in North Carolina, nor is it registered to do business in North Carolina. (2d Moua Aff. ¶¶ 7–8.) ACI employed between five to ten individuals in North Carolina while Plaintiff was its CEO. (2d Shively Aff. ¶ 37.)

**B.      The Severance Agreement and Release**

15.      On 17 July 2024, Plaintiff attended a virtual meeting with Mr. Moua from his home in North Carolina.  During this meeting, Mr. Moua suggested that Plaintiff resign as CEO of ACI.  (1st Shively Aff. ¶¶ 17–18.)

16.      After the meeting, Mr. Moua sent Plaintiff an email containing "an offer to start the discussion" about the terms of a formal resignation package.  Mr. Moua proposed that one term of this resignation package be that "Boathouse will buy out [Plaintiff's] remaining equity."  Plaintiff emailed in response stating that he "[g]enerally agree[d], high level," but that "[d]etails obviously matter" and that a formal offer should be written for his attorneys to review.  (1st Shively Aff. Ex. 1 [July Email Exch.].)  Plaintiff negotiated the terms of the Severance Agreement and Release (SAR) with Mr. Moua.  (1st Shively Aff. ¶ 24.)  Mr. Moua never traveled to North Carolina to negotiate the SAR.  (1st Moua Aff. ¶ 17.)

17.      The SAR was executed on 26 July 2024.  (Compl. ¶¶ 1, 14; *see* Compl Ex. A [SAR].)  Plaintiff executed the SAR first and did so on his own behalf while in North Carolina.  (1st Shively Aff. ¶ 23; Boathouse Defs.' Reply Mem. Supp. Boathouse Mot. Ex. D, ECF No. 45.2 [DocuSign Summ.].)  Subsequently, Phillip Ford (Mr. Ford), ACI's Chief Human Resources Officer, executed the SAR on a signature line appearing below the words "**COMPANY: ACI LEARNING HOLDINGS, LLC**."  (SAR 6.)  Mr. Ford executed the SAR while outside of North Carolina.  (Aff. Phillip Ford Supp. ACI Mot. ¶ 10, ECF No. 37.3 [Ford Aff.].)

18. The SAR provides that it is an agreement between "**ACI Learning Holdings, LLC**, a Delaware limited liability company ('<u>ACI</u>'), together with each of its past and present subsidiaries, including but not limited to, MIS Training Institute Holdings, Inc. . . . and the Company's parents, affiliates, successors, and assigns (collectively, the 'Company') and [**Plaintiff**], on behalf of [Plaintiff] and [Plaintiff's] heirs, executors, guardians, administrators, successors and assigns[.]" (Compl. ¶ 14; SAR 1.)

19. The SAR contains a Delaware choice-of-law provision. (*See* Compl. ¶ 30; SAR ¶ 14.) The SAR does not require that any party's performance occur in a particular state. (*See* SAR.)

20. Pursuant to the SAR, Plaintiff agreed to, among other things, resign as CEO of ACI, accept severance pay from "the Company," and provide consulting and transition services for a period of time to "the Company." (Compl. ¶ 16; *see* SAR ¶¶ 1–3.)

21. Paragraph 6 of the SAR provides that "[Plaintiff] agrees to sell, and Company and/or Boathouse . . . agrees to buy all of [Plaintiff's] equity interests in the Company, to wit: 73.68 preferred units. The aggregate purchase price for such equity interests shall be One Million Eighty-Five Thousand Fifty-Three Dollars and Sixty-Four Cents ($1,085,053.64)." (Compl. ¶ 18; SAR ¶ 6.) The deadline for the purchase of Plaintiff's equity interests was 30 October 2024. (Compl. ¶ 17; SAR ¶¶ 1, 6.)

22. After the execution of the SAR, Plaintiff received numerous calls, emails, and text messages from "the Company" asking that he advise on "Company matters."

(1st Shively Aff. ¶ 25.)  Such matters included transitioning the role of ACI's CEO to another employee and responding to information requests.  (1st Shively Aff. ¶ 25.) Plaintiff provided the requested advising services from his home in North Carolina. (1st Shively Aff. ¶ 25; *see* Compl. ¶ 21.)

23.    On 24 September 2024, ACI's new CEO, Scott Horn (Mr. Horn), emailed Plaintiff stating that the purchase of Plaintiff's equity would be delayed due to an audit.  (1st Shively Aff. Ex. 2 [Sep. Email Exch.].)  Plaintiff emailed the following to Mr. Moua in response to Mr. Horn's message:

> According to Section 6 of the Severance Agreement and Release, payment for my equity in the amount of $1,085,053.64 is due to me by October 30, 2024 (90 days after August 1, 2024). If either ACI or Boathouse does not repurchase my equity for that amount by that time, then a breach of our agreement will have occurred. In that case, I will have to consider whether to take action to address any such breach.

(Sep. Email Exch.)  In response, Mr. Moua requested an extension of the purchase deadline:

> We would respectfully ask you to accommodate us during this time period so we can get through the investigation and deliver it to the lenders and investors, as this would force a further acceleration on the debt, which would impair the company's ability to recover any capital towards your payment. We understand you have your rights and you can do as you wish, but the company has to stay within guidelines that have been set by the lender and no cash will be distributed to any other party other than the lenders at this point until this is resolved.

(Compl. ¶ 21; Sep. Email Exch.)

24.    To date, Defendants have not purchased any of Plaintiff's equity interests in ACI.  (Compl. ¶ 19.)

## III. PROCEDURAL BACKGROUND

25. The Court sets forth here only those portions of the procedural history relevant to its determination of the Motions.

26. Plaintiff filed his Complaint on 29 January 2025. (ECF No. 3.)

27. This matter was designated as a mandatory complex business case and assigned to the undersigned on 5 March 2025. (ECF Nos. 1–2.)

28. Plaintiff alleges two claims for relief: (1) breach of contract for nonpurchase of Plaintiff's equity interests in ACI, (Compl. ¶¶ 23–28); and (2) "bad faith breach of contract" for Defendants' assertion that they could not purchase Plaintiff's equity interests in ACI due to ACI undergoing an audit, (Compl. ¶¶ 29–37).

29. The Boathouse Defendants filed the Boathouse Motion and a supporting brief on 9 April 2025. (Boathouse Mot.; Br. Supp. Boathouse Mot., ECF No. 23 [Boathouse Br.].) Alongside the Boathouse Motion, the Boathouse Defendants filed an affidavit from Mr. Moua and an ACI internal document providing evidence of Plaintiff's move to North Carolina. (1st Moua Aff.; Emp. R.) Plaintiff filed his response and accompanying affidavit on 29 April 2025. (Pl.'s Resp. Opp'n Boathouse Mot., ECF No. 39 [Pl.'s Resp. Opp'n Boathouse Mot.]; 1st Shively Aff.) On 16 May 2025, the Boathouse Defendants filed their reply, an additional declaration from Mr. Moua, and a DocuSign summary for the SAR. (Boathouse Defs.' Reply Mem. Supp. Boathouse Mot., ECF No. 45 [Boathouse Reply]; Decl. Chong Moua Supp. Boathouse Mot., ECF No. 45.3 [Moua Decl.]; DocuSign Summ.)

30. The ACI Defendants filed the ACI Motion and a supporting brief on 23 April 2025. (ACI Mot.; ACI Defs.' Br. Supp. ACI Mot., ECF No. 38 [ACI Br.].) In support of the ACI Motion, the ACI Defendants filed affidavits from Mr. Moua and Mr. Ford. (2d Moua Aff.; Ford Aff.) Plaintiff filed his response on 20 May 2025. (Pl.'s Resp. Br. Opp'n ACI Mot., ECF No. 46 [Pl.'s Resp. Opp'n ACI Mot.].) The ACI Defendants filed their reply on 6 June 2025. (ACI Defs.' Reply Pl.'s Resp. Opp'n ACI Mot., ECF No. 47 [ACI Reply].)

31. The Motions have been fully briefed, and the Court held a hearing on the Motions on 5 August 2025, at which all parties were represented by counsel. (*See* ECF No. 48.)

32. The Motions are ripe for resolution.

## IV. LEGAL STANDARD

### A. Rule 12(b)(2)

33. To overcome a Rule 12(b)(2) motion to dismiss, the plaintiff must prove by a preponderance of the evidence grounds for the Court's exercise of personal jurisdiction over the moving defendants. *Button v. Level Four Orthotics & Prosthetics, Inc.*, 2020 NCBC LEXIS 30, at *21–22 (N.C. Super. Ct. Mar. 13, 2020). When the plaintiff and defendant submit affidavits in support of their positions, the Court may review the affidavits to determine whether personal jurisdiction exists. *Id.* at *22; *Se. Paper Grp., Inc. v. Sunburst Chems., Inc.*, 2012 NCBC LEXIS 15, at *8 (N.C. Super. Ct. Mar. 13, 2012). Unverified allegations in a complaint that conflict with a defendant's sworn affidavit may not be taken as true. *Button*, 2020 NCBC

LEXIS 30, at *22. "If the trial court chooses to decide the motion based on affidavits, 'the trial judge must determine the weight and sufficiency of the evidence [presented in the affidavits] much as a juror.'" *Banc. of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693 (2005); *Weisman v. Blue Mt. Organics Distrib., LLC*, 2014 NCBC LEXIS 41, at *3 (N.C. Super. Ct. Sep. 5, 2014).

## B.      Rule 12(b)(6)

34.      In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations in the Complaint in the light most favorable to Plaintiff. *See Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017). The Court's inquiry is "whether, as a matter of law, the allegations of the [C]omplaint . . . are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670 (1987). The Complaint's allegations are liberally construed and generally accepted as true. *Laster v. Francis*, 199 N.C. App. 572, 577 (2009). However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health and Hum. Servs.*, 174 N.C. App. 266, 274 (2005) (quotation marks and citation omitted). "[D]ocuments attached to and incorporated into a complaint are properly considered as part of a Rule 12(b)(6) motion to dismiss." *Perryman v. Town of Summerfield*, 293 N.C. App. 116, 123 (2024).

35.      "It is well established that dismissal pursuant to Rule 12(b)(6) is proper 'when (1) the complaint on its face reveals that no law supports the plaintiff's claim;

(2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.' " *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018). This standard of review for Rule 12(b)(6) motions is the standard our Supreme Court "routinely uses . . . in assessing the sufficiency of complaints in the context of complex commercial litigation." *Id.* at 615 n.7 (citations omitted).

## V.     ANALYSIS

36.     Defendants seek the dismissal of all claims against them pursuant to Rule 12(b)(2). (Boathouse Mot. 1; ACI Mot. 1.) The Boathouse Defendants also seek the dismissal of all claims against them pursuant to Rule 12(b)(6). (Boathouse Mot. 1.) The Court addresses each argument in turn.

### A.     <u>Personal Jurisdiction</u>

37.     "To determine whether personal jurisdiction over a defendant exists, the Court conducts a two-step analysis: first, personal jurisdiction must exist under the North Carolina long-arm statute; second, the exercise of personal jurisdiction must not violate the due process clause of the Fourteenth Amendment of the United States Constitution." *Islet Scis., Inc. v. Brighthaven Ventures, LLC*, 2017 NCBC LEXIS 17, at *10–11 (N.C. Super. Ct. Mar. 6, 2017).

38.     In relevant part, North's Carolina's long-arm statute authorizes the exercise of personal jurisdiction in an action that:

> a. Arises out of a promise, made anywhere to the plaintiff . . . by the defendant to perform services within this State or to pay for services to be performed in this State by the plaintiff; or

. . . .

> c. Arises out of a promise made anywhere to the plaintiff . . . by the defendant to deliver or receive within this State, or to ship from this State, goods, documents of title, or other things of value[.]

N.C.G.S. § 1-75.4(5)(a), (c). North Carolina's long-arm statute is liberally construed in favor of finding personal jurisdiction. *Cambridge Homes of N.C. Ltd. P'ship v. Hyundai Constr., Inc.*, 194 N.C. App. 407, 412 (2008).

39. For a court's exercise of personal jurisdiction to comply with due process, the defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts exist if " 'there [is] some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *United Buying Grp., Inc. v. Coleman*, 296 N.C. 510, 515 (1979); *Padron v. Bentley Marine Grp., LLC*, 262 N.C. App. 610, 615 (2018). "The relationship between the defendant and the forum state must be such that the defendant should 'reasonably anticipate being haled into' a North Carolina court." *State ex rel. Cooper v. W. Sky Fin., LLC*, 2015 NCBC LEXIS 87, at *13 (N.C. Super. Ct. Aug. 27, 2015).

40. "There is no mechanical test for determining jurisdiction between contracting parties." *Revel XP, LLC v. Never Forget Brands, LLC*, 2022 NCBC LEXIS 80, at *17 (N.C. Super. Ct. July 25, 2022). To determine whether personal jurisdiction exists, the Court analyzes the "totality of the circumstances" each case

presents. *Schaeffer v. SingleCare Holdings, LLC*, 384 N.C. 102, 111 (2023). Factors the Court considers in the minimum contacts analysis include "(1) the quantity of the contacts; (2) the nature and quality of the contacts; (3) the source and connection of the cause of action with those contacts; (4) the interest of the forum state; and (5) the convenience to the parties." *Revel XP*, 2022 NCBC LEXIS 80, at *16 (quotation marks and citation omitted). Importantly, "the 'unilateral activity of another party . . . is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.' " *Schaeffer*, 384 N.C. at 109.

41. "There are two types of personal jurisdiction: specific jurisdiction and general jurisdiction." *Worley v. Moore*, 2017 NCBC LEXIS 15, at *21 (N.C. Super. Ct. Feb. 28, 2017). "General jurisdiction exists when the defendant has continuous and systematic contacts with the forum state, even though those contacts may be unrelated to the cause of action." *Id.* "Specific jurisdiction exists when a defendant purposefully directs [its] activities toward the forum and the cause of action arises out of or relates to such activities." *Id.*

42. Plaintiff does not allege that Defendants are subject to general jurisdiction in North Carolina. (Pl.'s Resp. Opp'n Boathouse Mot. 17; Pl.'s Resp. Opp'n ACI Mot. 11.) As such, the Court limits its analysis to whether specific jurisdiction over Defendants exists. *See Troublefield v. Automoney, Inc.*, 284 N.C. App. 494, 503 (2022).

### 1. North Carolina's Long-Arm Statute

#### a. <u>The Boathouse Defendants</u>

43. As a preliminary matter, the Boathouse Defendants contend that North Carolina's long-arm statute does not subject them to jurisdiction in this action because they are not parties to the SAR. In support of this argument, they argue that Mr. Moua only negotiated the SAR on ACI's behalf, and neither Boathouse nor an authorized representative of Boathouse signed it. The Boathouse Defendants, therefore, contend that they have not promised to deliver payment for Plaintiff's equity interests to North Carolina, precluding the application of North Carolina's long-arm statute to them. (Boathouse Br. 8, 14–17; Boathouse Reply 5, 9); *see* N.C.G.S. § 1-75.4(5)(c).

44. In response, Plaintiff contends that the long-arm statute is applicable to the Boathouse Defendants because they are parties to the SAR. (Pl.'s Resp. Opp'n Boathouse Mot. 10–15.) Plaintiff asserts that Mr. Moua directed Mr. Ford to execute the SAR on behalf of "the Company," a collective designation that includes the Boathouse Defendants. (Pl.'s Resp. Opp'n Boathouse Mot. 19; 1st Shively Aff. ¶ 23; *see* Compl. ¶ 14.) Plaintiff further asserts that, under North Carolina and Delaware law, the Boathouse Defendants adopted the SAR by (a) agreeing to purchase Plaintiff's equity interests in paragraph 6 of the SAR and (b) asking Plaintiff to extend the deadline for the purchase in a September 2024 email. (Pl.'s Resp. Opp'n Boathouse Mot. 11–13, 18.) Plaintiff, therefore, argues that the Boathouse Defendants promised to deliver a thing of value to North Carolina. *See*

N.C.G.S. § 1-75.4(5)(c). Because the SAR requires Plaintiff to perform consulting and transition services for the "Company," (SAR 1), Plaintiff also argues that the Boathouse Defendants promised to pay for services he performed in North Carolina. (Pl.'s Resp. Opp'n Boathouse Mot. 14); *see* N.C.G.S. § 1-75.4(5)(a).

45. The Court applies North Carolina law to determine whether the Boathouse Defendants are parties to the SAR. *See Yoder v. Verm*, 2024 NCBC LEXIS 59, at *5–6 (N.C. Super. Ct. Apr. 19, 2024) (stating that the defendant "is not a party to the [s]ettlement [a]greement and thus is not bound by the [a]greement's provisions"); *see also Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169, 178 (4th Cir. 2025) ("[W]e cannot apply any provision of the contract, including its choice-of-law clause, before deciding if the parties formed an agreement."); *cf. Protective Life Ins. Co. v. NationsCredit Fin. Servs. Corp.*, 2016 NCBC LEXIS 10, at *8–9 (N.C. Super. Ct. Feb. 2, 2016) ("North Carolina courts enforce contractual choice of law provisions as long as *the parties* have a reasonable basis for their choice[.]" (emphasis added)).

46. "The object of a signature to a contract is to show assent, but the signing of a contract is not necessarily essential to its validity. Assent may be shown in other ways, such as acts or conduct or silence." *Burden Pallet Co. v. Ryder Truck Rental, Inc.*, 49 N.C. App. 286, 289 (1980); *see also Se. Caissons, LLC v. Choate Constr. Co.*, 247 N.C. App. 104, 113 (2016) ("Although the purpose of a signature is to show assent, assent may be shown where the party who failed to sign the writing accepted its terms and acted upon those terms[.]").

47. The Court determines that the Boathouse Defendants assented to the SAR. Mr. Moua, one of the managing members of the Boathouse Defendants, exclusively negotiated the SAR with Plaintiff. (1st Shively Aff. ¶ 24.) Mr. Moua initially proposed that the Boathouse Defendants purchase Plaintiff's equity interests. (July Email Exch.) A corresponding term appears in the executed SAR, albeit modified to include the "Company": "As a material term of this Agreement . . . Company *and/or Boathouse* . . . agrees to buy all of Executive's equity interests[.]" (SAR ¶ 6 (emphasis added).) Provided that the Boathouse Defendants do not contest Mr. Moua's authority to enter agreements on their behalf, it follows that the Boathouse Defendants inserted this term into the SAR and, therefore, agreed to assume obligations under the SAR. *See Schwarz v. St. Jude Med., Inc.*, 254 N.C. App. 747, 755 (2017) ("Ordinarily one party, by making an offer, assents in advance; the other, upon learning of the offer, assents by accepting it and thereby forms the contract.").

48. Further, in the September email exchange between Plaintiff and Mr. Moua, Plaintiff expressly stated that he might pursue legal action if "ACI *or Boathouse*" failed to purchase his equity interests. (Sep. Email Exch. (emphasis added).) Instead of refuting the Boathouse Defendants' responsibility for making the purchase, Mr. Moua used his Boathouse email address to ask that Plaintiff "accommodate *us*" by extending the deadline for the purchase. (Sep. Email Exch. (emphasis added).) Mr. Moua's message to Plaintiff also stated that "*[w]e* understand you have your rights and can do as you wish." (Sep. Email Exch. (emphasis added).) Mr. Moua's use of collective language indicates that he understood the ACI and Boathouse

Defendants to be parties to the SAR, and that he acknowledged Plaintiff's rights and requested the extension on behalf of both. *See NRC Golf Course, LLC v. JMR Golf, LLC*, 222 N.C. App. 492, 502 (2012) ("*Parties* to a contract may agree to change its terms[.]" (emphasis added) (quotation marks and citation omitted)); *see also Eastwood Constr. Partners, LLC v. Waxhaw Devs., LLC*, No. COA23-180, 2023 N.C. App. LEXIS 756, at \*8 (N.C. App. Dec. 5, 2023) (unpublished) (finding plaintiff assented to contract by seeking to amend it).[1]

49. Because the Boathouse Defendants assented to the SAR, they promised to deliver to Plaintiff payment for his equity interests. "It is well-established that money is a 'thing of value' contemplated under the long-arm statute." *First Union Nat'l Bank v. Bankers Wholesale Mortg., LLC*, 153 N.C. App. 248, 252 (2002).

---

[1] Although the Court applies North Carolina law to make its determination, the result would be the same under Delaware law. If a contract contemplates that non-signatories may adopt it, "one does not have to be a signatory to [such] contract . . . to become bound by it." *Am. Legacy Found. v. Lorillard Tobacco Co.*, 831 A.2d 335, 343–44 (Del. Ch. 2003); *Techview Invs. Ltd. v. Amstar Pol. Prop. Fund I, L.P.*, 2021 Del. Super. LEXIS 571, at \*21–22 (Del. Ch. Aug. 31, 2021). A non-signatory may adopt a contract through words or conduct, including statements confirming that it is bound by the contract. *OrbiMed Advisors LLC v. Symbiomix Therapeutics, LLC*, 2024 Del. Ch. LEXIS 51, at \*16–18 (Del. Ch. Feb. 23, 2024). Here, the SAR contemplates adoption by non-signatories because it purports to bind "the Company's parents, affiliates, successors and assigns," as well as "[Plaintiff's] heirs, executors, guardians, administrators, successors and assigns[.]" (SAR 1.) *See Am. Legacy Found.*, 831 A.2d at 343–44 (contract purporting to bind signatories' successors contemplated adoption); *OrbiMed*, 2024 Del. Ch. LEXIS 51, at \*18 (same). Thus, the Court concludes that Mr. Moua's failure to refute Boathouse's obligations under the SAR and use of collective language constitute an admission by him that the Boathouse Defendants adopted, and are parties to, the SAR. *See OrbiMed*, 2024 Del. Ch. LEXIS 51, at \*19–20 (non-signatory successor adopted contract by acknowledging opposing party's contractual rights).

Accordingly, the Court determines that the Boathouse Defendants are parties to the SAR and North Carolina's long-arm statute applies to them.[2]

b.      The ACI Defendants

50.     The ACI Defendants concede that they are parties to the SAR and that North Carolina's long-arm statute applies to them. (ACI Br. 7, 9–11.) Accordingly, the Court concludes that Defendants are subject to the long-arm statute. Thus, only whether the exercise of personal jurisdiction over Defendants comports with due process remains at issue.

**2.      Due Process and Minimum Contacts**

51.     As stated above, the Boathouse Defendants are Delaware limited liability partnerships with their principal places of business in Pennsylvania. (1st Moua Aff. ¶ 6.) The ACI Defendants are Delaware entities with their principal places of business in Colorado. (2d Moua Aff. ¶ 4.)

52.     Defendants contend that they lack minimum contacts with North Carolina such that the Court's exercise of personal jurisdiction would offend due process. (Boathouse Br. 8; ACI Br. 7, 9–11.) They argue that the SAR is at most a contract that constitutes a single contact with North Carolina that terminates their relationship with a North Carolina resident. (Boathouse Br. 9; Boathouse Reply 6; ACI Br. 9–10.) They point out that Mr. Moua never traveled to North Carolina while negotiating the SAR, and that Mr. Ford did not execute the SAR in North Carolina.

---

[2] The Court notes that the Boathouse Defendants only challenge the application of the long-arm statute on the basis that they are not parties to the SAR. In this regard, they bring no argument about whether the SAR's terms require delivery of a thing of value to North Carolina. (*See* Boathouse Br. 8.)

(Boathouse Br. 11; Boathouse Reply 5–6; 1st Moua Aff. ¶¶ 6–8, 12–15; ACI Br. 9–10.) They also point out that they are Delaware entities with principal places of business outside of North Carolina; they are not registered to do business in North Carolina; and they have no bank accounts, property, or agents for service of process in North Carolina. (Boathouse Br. 10–11; ACI Br. 11.) Further, they argue that North Carolina's interest in adjudicating the dispute is minimal because the SAR is governed by Delaware law. (Boathouse Br. 6; ACI Br. 12.) As Plaintiff's former employers, the ACI Defendants also argue that Plaintiff, at the time of his hiring, resided in Illinois and did not disclose any intent to relocate to North Carolina until after the move had occurred. (ACI Br. 11.) The ACI Defendants characterize Plaintiff's move to North Carolina as a unilateral decision that does not support a finding that they purposefully availed themselves of the benefit of conducting activities in North Carolina. (ACI Br. 12.) The ACI Defendants also note that the terms of the SAR do not require performance in North Carolina. (*See* ACI Br. 10.)

53.    Plaintiff contends that Defendants have sufficient minimum contacts with North Carolina for this Court to properly exercise jurisdiction over them. (Pl.'s Resp. Opp'n Boathouse Mot. 15; Pl.'s Resp. Opp'n ACI Mot. 11–14.) Plaintiff argues that Defendants offered him the SAR while knowing that he resided in North Carolina, that he accepted the SAR while in North Carolina, and that payment for his equity interests was to be sent to him in North Carolina. Plaintiff also points out that the SAR required him to perform consulting and transition services, which he performed from North Carolina. (Pl.'s Resp. Opp'n Boathouse Mot. 15–17; 1st Shively Aff. ¶ 25;

Pl.'s Resp. Opp'n ACI Mot. 11–14.)  Further, Plaintiff argues that North Carolina has an interest in giving its residents a convenient forum for redressing injuries caused by out-of-state actors.  Plaintiff also contends that Defendants would not be inconvenienced by litigating in North Carolina given their significant assets.  To the same point, Plaintiff notes that as of 1 August 2024, the ACI Defendants had around 300 employees in the United Kingdom and United States, including between five to ten employees in North Carolina.  (Pl.'s Resp. Opp'n Boathouse Mot. 17; 1st Shively Aff. ¶¶ 32–39.)

54.    "Although a contractual relationship between a North Carolina resident and an out-of-state party alone does not *automatically* establish the necessary minimum contacts with this State, nevertheless, a single contract may be a sufficient basis for the exercise of *in personam* jurisdiction if it has a substantial connection with this State." *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 367 (1989). Which party initiates the contractual relationship is "a critical factor in assessing whether a nonresident defendant has made 'purposeful availment of the state.' " *Banc of Am. Sec.*, 169 N.C. App. at 698 (defendant soliciting contract with North Carolina business supported jurisdiction); *CFA Med., Inc. v. Burkhalter*, 95 N.C. App. 391, 395 (1989) (plaintiff soliciting contract with Tennessee resident did not support jurisdiction).  Additional factors the Court considers include "the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Revel XP*, 2022 NCBC LEXIS 80, at *17–18 (quotation marks omitted).

55.     In *Tom Togs*, the Supreme Court of North Carolina found that a contract for the manufacture of t-shirts had a substantial connection with North Carolina when (1) the defendant offered the contract to someone who it knew to be a North Carolina resident; (2) the plaintiff accepted the contract in North Carolina; (3) the defendant was aware that the contract would be substantially performed in North Carolina, as the plaintiff told the defendant that the t-shirts would be manufactured in the state, and the defendant agreed to send labels to the state to be affixed to the t-shirts; and (4) the defendant returned unsatisfactory t-shirts to North Carolina. *Id.* The Court described other factors supporting its exercise of personal jurisdiction, including that: (i) North Carolina had an interest in providing the resident plaintiff a convenient forum to redress its injuries, (ii) many of the witnesses were located within the state, (iii) North Carolina law would apply to the action, and (iv) North Carolina had a special interest in the textile manufacturing industry.  Further, the defendant pointed to no disparity between itself and the plaintiff that would render the exercise of personal jurisdiction unfair. *Id.* at 367–68.

56.     In *Schaeffer v. SingleCare Holdings, LLC*, the Supreme Court of North Carolina analyzed whether personal jurisdiction existed over out-of-state corporate employers concerning the breach of an employment agreement.  384 N.C. at 103–115. There, defendant employers had originally hired plaintiff, a remote employee, while he resided in California.  *Id.* at 109.  However, defendant employers approved plaintiff's request to move to North Carolina and helped him purchase a house there. *Id.* at 111.  Later, defendant employers paid state taxes based on plaintiff's work in

North Carolina and mailed tax documents to his North Carolina address. *Id.* Further, they frequently communicated with plaintiff regarding his work through phone calls and emails, and they reimbursed plaintiff for the work expenses he incurred while in North Carolina. *Id.* Defendants also instructed plaintiff to undertake activities that would further defendants' business in North Carolina, such as selling services targeted towards North Carolina businesses and residents, and they terminated plaintiff while knowing that he resided in North Carolina. *Id.* at 112. Accordingly, the Supreme Court found that the employers' contacts with North Carolina supported a finding of personal jurisdiction. *Id.* at 115.

57. Here, Defendants knew that Plaintiff resided in North Carolina when they offered him the SAR and when, pursuant to the SAR, Plaintiff's employment with ACI ended. Plaintiff also accepted the SAR while in North Carolina. Further, while in North Carolina, Plaintiff received various calls, texts, and e-mails asking that he perform consulting and transition services, which he was obligated by the SAR to provide. Plaintiff provided these services while in North Carolina. These factors support a finding that the exercise of personal jurisdiction over Defendants is proper. *See Tom Togs*, 318 N.C. at 367–68; *Banc of Am. Sec.*, 169 N.C. App. at 698.

58. While relevant, it is not determinative that the SAR contains a Delaware choice-of-law provision or that other representatives of Defendants never physically traveled to North Carolina in connection with the SAR. *See Banc. of Am. Sec.*, 169 N.C. App. at 699–701 (finding that personal jurisdiction existed despite the parties' contract containing a New York choice-of-law clause); *see Revel XP*, 2022 NCBC

LEXIS 80, at *18, 24 (finding that personal jurisdiction existed despite negotiations occurring between out-of-state individuals). The same is true of the fact that the SAR does not require performance in North Carolina. *See Toshiba Glob. Com. Sols. Inc.*, 381 N.C. 692, 703 (2022) ("[N]othing . . . suggests that unless the location of the act is dictated by the contract, performance of a contractual obligation in the forum state is an irrelevant unilateral act."). Nonetheless, there is no evidence that Plaintiff, pursuant to the SAR, undertook activities that were targeted towards North Carolina residents or businesses. Further, Defendants are not registered to do business in North Carolina, have principal places of business outside of North Carolina, and have no bank accounts, property, or agents for service of process in North Carolina. These factors weigh against the exercise of personal jurisdiction. *See Revel XP*, 2022 NCBC LEXIS 80, at *16; *see Schaeffer*, 384 N.C. at 111.

59. The focus of the Court's inquiry, however, is whether the SAR has a substantial connection with North Carolina. *See Tom Togs*, 318 N.C. at 367–68. As stated above, the Defendants offered the SAR to Plaintiff, who they knew to be a North Carolina resident, and Plaintiff performed his obligations under the SAR while in North Carolina. The first of these factors is "critical" in determining whether the SAR has a substantial connection with North Carolina. *Banc. of Am. Sec.*, 169 N.C. App. at 698. Thus, while it is a close case, the Court finds that, on balance, Defendants have sufficient minimum contacts with North Carolina to require them to defend this action here consistent with the requirements of due process.

60. Accordingly, the Court concludes that Defendants' contacts with North Carolina are sufficient to support a finding of personal jurisdiction. The Court, therefore, **DENIES** the Boathouse Motion to the extent it seeks dismissal of Plaintiff's claims under Rule 12(b)(2), and the Court **DENIES** the ACI Motion in full.

## B.  Failure to State a Claim

61. The Boathouse Defendants' sole basis for their 12(b)(6) motion is that they are not parties to the SAR and cannot be held liable for the breach thereof. (Boathouse Br. 14–17.)  Specifically, they argue that neither Boathouse nor an authorized agent of Boathouse signed the SAR.  (Boathouse Br. 16.)

62. To assert a claim for breach of contract under Delaware law, a plaintiff must allege "(1) the existence of a contract; (2) the breach of an obligation imposed by the contract; and (3) damages that the plaintiff suffered as a result of the breach." *Agahi v. Kelly*, 2024 Del. Super. LEXIS 163, at \*20 (Del. Super. Ct. Mar. 15, 2024) (quotation marks omitted).  "[O]nly a party to a contract may be sued for breach of that contract."  *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 172 (2002); *In re Health Grp. Holdings, LLC*, 2022 Del. Ch. LEXIS 311, at \*30 (Del. Ch. Oct. 31, 2022).  Thus, to survive the Boathouse Defendants' Rule 12(b)(6) motion, the Complaint must contain sufficient factual allegations to support the conclusion that the Boathouse Defendants are parties to the SAR.  *See Harris*, 85 N.C. App. at 670; *Meyer v. Walls*, 347 N.C. 97, 114 (1997) ("[A] conclusory allegation . . . should not be sufficient, by itself, to withstand a Rule 12(b)(6) motion to dismiss.  The facts alleged in the complaint must support such a conclusion.").

63. Here, Plaintiff alleges that the Boathouse Defendants are parties to the SAR. (Compl. ¶ 14.) To support this allegation, Plaintiff points to paragraph 6 of the SAR: "Company and/or Boathouse . . . agrees to buy all of Executive's equity interests in the Company[.]" (Compl. ¶ 18; SAR ¶ 6.) In further support of this allegation, Plaintiff alleges that Mr. Moua sent him an email confirming that the Boathouse Defendants would purchase Plaintiff's equity interests. (Compl. ¶ 18 n.1.)

64. Plaintiff also alleges that ACI executed the SAR on behalf of "the Company," a collective designation that Plaintiff contends includes the Boathouse Defendants. (Compl. ¶ 14.) In support of this allegation, Plaintiff points to the SAR's introductory paragraph: "**THIS [SAR]** . . . is entered into between **ACI Learning Holdings, LLC** . . . together with each of its past and present subsidiaries, including but not limited to, MIS Training Institute Holdings, Inc. . . . and the Company's parents, affiliates, successors and assignees (collectively, the 'Company') and [**Plaintiff**.]" (Compl. ¶ 14; SAR 1.) The SAR's signature block shows that Mr. Ford signed the SAR below the words "**COMPANY: ACI LEARNING HOLDINGS, LLC**." (SAR 6.)

65. It is unclear from the SAR's terms alone whether ACI executed the SAR on behalf of the Boathouse Defendants. Nonetheless, Plaintiff's remaining allegations suffice for the Complaint to survive the Boathouse Motion. Plaintiff's factual allegations that (1) the SAR expressly states that the Boathouse Defendants agree to purchase Plaintiff's equity interests and (2) Mr. Moua affirmed the Boathouse

Defendants would do so support the conclusion that the Boathouse Defendants are parties to the SAR.

66.   Accordingly, the Court **DENIES** the Boathouse Motion to the extent it seeks dismissal under Rule 12(b)(6).

## VI.   CONCLUSION

67.   For the foregoing reasons, the Court hereby **DENIES** the Motions in full.


**IT IS SO ORDERED**, this the 27th day of August, 2025.


/s/ Michael L. Robinson
Michael L. Robinson
Chief Business Court Judge